IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

REGINA R. WALKER,

                              Civ. No. 09-1291-AC

                    Plaintiff,          FINDINGS AND
                                        RECOMMENDATION

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                    Defendant.

_____

ACOSTA, Magistrate Judge:

        Claimant Regina R. Walker ("Claimant") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying her application for Supplemental

Security Income ("SSI") disability benefits under Title XVI of the Social Security Act ("SSA"). *See*

42 U.S.C. §§ 401-433 and §§ 1381-83f (2010).  This court has jurisdiction to review the

Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, the court concludes that the matter should be remanded for an award of benefits.

*Procedural History*

Claimant filed for SSI benefits on September 21, 2006, alleging a disability onset date of June 1, 2002. The claim was denied initially and on reconsideration. On June 17, 2009, a hearing was held before an Administrative Law Judge ("ALJ"), who issued a decision on July 1, 2009, finding Claimant not disabled. Claimant requested review of this decision on July 6, 2009. The Appeals Council denied this request making the ALJ's decision the Commissioner's final decision. Claimant filed for review of the final decision in this court on November 3, 2009.

*Factual Background*

I.     Documentary Evidence

Claimant received treatment for Hepatits C between February and September 2004, during which time Claimant was not able to work. (Tr. 184-185.) Claimant was seen by Dr. Shane Son ("Dr. Son") on September 10, 2004, to follow up on her Hepatitis C treatment. At the time, she was doing well, but complained of symptoms related to bipolar disorder and anxiety attacks. She was diagnosed with an anxiety disorder, and continued her use of trazodone and restarted using lithium. (Tr. 184.) Six weeks later, Claimant reported good results from the lithium. (Tr. 182.) A few months later, Claimant requested a referral from Dr. Son to Behavioral Health Resources ("BHR"), which request was fulfilled. (Tr. 180.)

In June 2005, Claimant reported difficulty sleeping, despite use of Vistaril, an anti-anxiety medication. (Tr. 242.) She appeared motivated to get treatment for her mental health and substance abuse issues, and to get better. At the time, her Global Assessment of Functioning score ("GAF")

was assessed at 45.  (Tr. 224-223.)

Claimant was evaluated by Marne Nelson, ARNP ("Nelson") on September 7, 2005. Nelson referred to Claimant as a "fair historian."  (Tr. 233.)  Claimant reported increased irritation, emotionality, and anxiety over the past few months, but that she was not depressed and did not have a history of depression, though she admitted having difficulty concentrating since childhood.  *Id.* Claimant reported an increase in panic attacks, franticness, and racing thoughts, as well as flashbacks and nightmares from her abusive past.  She also reported that she thinks obsessively "not to forget" to do things.  *Id.*  Nelson referred to a previous evaluation by Dr. Sara Lerner, M.D., who referred to Claimant's condition as a "diagnostic morass" and had difficulty distinguishing between diagnoses of attention deficit and hyperactivity disorder, known as ADHD, and bipolar disorder.  *Id.*

On February 15, 2006, Claimant was again seen by Dr. Son who referred to her history of bipolar disorder and noted that she was taking trazodone, lithium, and Vistaril, and was currently stable. (Tr. 177.)  He noted that Claimant was in outpatient therapy at BHR, but not for her mental health issues.  He noted that Claimant had a history of Hepatitis C, had been treated approximately a year prior, and was due for a "hepatitis C check."  *Id.*

In a "Psychological/Psychiatric Evaluation" whose release was authorized by Claimant on July 3, 2006, Dr. Dan Neims diagnosed Claimant with depressive disorder, chronic PTSD, and alcohol and drug abuse. (Tr. 216.)  On July 11, 2006, Dr. George Radkey ("Dr. Radkey") diagnosed Claimant with depressive disorder and chronic PTSD, based on his review of medical reports. (Tr. 202.)

Claimant completed a function report on August 31, 2006, and reported the following.  On an average day, Claimant gets her children up and ready for school, takes medication, does

FINDINGS AND RECOMMENDATION          3                              {KPR}

household chores, prepares meals, reads the bible, and prays. (Tr. 106.) Her mother and a friend from church help her care for her children. (Tr. 107.) Before the onset of her impairments, Claimant would go out more often and was able to deal with the public. *Id.* Her sleep is disrupted by nightmares, fear of darkness, and her own thoughts. *Id.* As for activities of daily living, Claimant bathes irregularly and is sometimes reminded to bathe by her children; Claimant needs to be reminded to take her medication; Claimant prepares simple meals in contrast to the more complex meals she prepared in the past due to a short attention span; and Claimant takes the whole day to keep up with cleaning and laundry. (Tr. 108.) As for outside activities, Claimant shops twice a month for food, house supplies, and things for her children; attends church approximately three times a week; and attends court-ordered drug and alcohol classes twice a week. (Tr. 109-110.) Claimant's impairments cause her to stay inside, sometimes all day, and isolate herself. (Tr. 109.) She does not drive because she is both unlicensed and fears driving, and she does not ride the bus. *Id.* Claimant has difficulty managing money; avoids her family; has difficulty communicating, interacting with others, concentrating and completing tasks, and following instructions. (Tr. 109, 111.) She has difficulty coping with stress and often ends up crying. Claimant fears change, other people, and being touched. (Tr. 111.) She can walk for fifteen minutes at a time and pay attention for thirty minutes at a time. *Id.*

On October 31, 2006, Carla van Dam, PhD ("Dr. van Dam") evaluated Claimant's mental residual functional capacity ("MRFC"). She concluded that Claimant was, at most, moderately limited in certain areas. Dr. van Dam wrote: "She can do both simple and complex tasks. Attention, concentration, pace and persistence are all mildly to moderately impaired at times secondary to symptoms." (Tr. 266.) She concluded that Claimant should not work with the general

public and would need clear routines and work requirements to be successful. *Id.* Dr. Bruce Eather, affirmed the validity of this assessment on February 26, 2007. (Tr. 292.)

Dr. van Dam also performed a psychiatric review technique, wherein she identified listings 12.08, Personality Disorders, and 12.09, Substance Addiction Disorders, as categories upon which the medical assessment relied. (Tr. 268.) As for the B Criteria, she found that Claimant experienced a moderate degree of limitation in activities of daily living, social functioning, and concentration, persistence, and pace. There was, however, insufficient evidence of episodes of decompensation. (Tr. 278.) As for the C Criteria, Dr. van Dam concluded that such criteria were not established. Dr. van Dam noted that claimant had successfully completed Hepatitis C and substance abuse treatment, and that Claimant "had worked more recently," though she failed to elaborate on this point. (Tr. 280.) She assessed Claimant as most likely suffering borderline personality disorder and opined that her variable presentation was the result of prior substance abuse. *Id.*

Claimant completed a second function report on February 14, 2007. The report is similar to the earlier report and differs only in the following respects. Claimant goes outside only rarely, in part because she does not like people. (Tr. 155.) She also has difficulty because of transportation constraints, an inability to be home on time, and a bad memory. *Id.* Claimant makes reference to "talking to [her] head" and "[her] head talking" with respect to how her impairments have changed over time. (Tr. 155, 156, 158.) She states that she avoids her friends and family because of "to[o] much sinning" and does not like people or touching. (Tr. 157.) She states she can pay attention for only fifteen minutes at a time, can follow some spoken instructions, with help, but cannot follow written instructions. (Tr. 157.) She states that to handle stress, she needs to be in her room and taking her medications, and that she needs her bible. (Tr. 158.) Claimant reports taking Depakote,

trazodone, and Vistaril. (Tr. 159.)

In December 2008, Claimant presented in Marion County seeking medication for bipolar disorder and reported that she had a substance-use relapse involving alcohol which resulted in a DUI and a stint in jail. (Tr. 300.) A discharge form from Cascadia Behavioral Healthcare indicates completion of a rehabilitation program, with an assessed GAF at both intake and discharge of 60. (Tr. 304.)

In a disability report for her appeal, Claimant states generally that her anxiety and depression have worsened, making it more difficult to go out, be around people, shop, cook, and perform personal care tasks. (Tr. 163-68.)

II.    Hearing Testimony

    *A.    Claimant's Testimony*

Claimant testified at her June 17, 2009, hearing. Claimant has two minor children, whose ages at the time of hearing were eleven and thirteen. The older child lives with Claimant and the younger child lives with Claimant's parents. (Tr. 28.) Claimant's mother, Nellie Jenkins ("Jenkins") is her primary source of transportation and takes her shopping and to appointments. (Tr. 30.) Her mother also helps her with her memory and with keeping her appointments. (Tr. 38.) If Claimant needs to be somewhere and neither parent is available to provide transportation, Claimant will take the bus only if absolutely necessary, but will not board the bus if there are too many people. (Tr. 39.) Claimant spends the bulk of her days at home caring for her daughter, doing household chores, and watching TV. (Tr. 31.) Claimant stays at home to avoid people and manage her anxiety. (Tr. 33.) Before moving to Oregon, Claimant attended church regularly, but she has not yet found a replacement church, in part because she does not know anyone. (Tr. 49.)

She reports suffering from anxiety, ADHD, and depression. Claimant reports that her anxiety is severe and something she suffers on a daily basis. Her anxiety is often so severe that she feels as if she will vomit and she must spend the bulk of the day managing her anxiety so that she can get through the day. (Tr. 32-33.) When she is experiencing anxiety, she sweats, feels as if she is having a heart attack, cannot breathe, and sometimes vomits. (Tr. 34.) Claimant experiences panic attacks daily, even when she spends the day at home, and these can last up to thirty minutes. Claimant testified that she does not really recover from panic attacks and just "get[s] through it[.]" (Tr. 35.) She has learned to use meditation to recover from a panic attack and stay focused. *Id.*

Claimant reports difficulty sleeping due to racing thoughts and bad dreams. (Tr. 37.) She only sleeps a few hours at a time. *Id.* Claimant is uncomfortable with confrontation and violence and has had problems with men in her past. She sometimes responds to such stressors by crying, though this is triggered generally by anxiety and depression. (Tr. 41-43.) Claimant reports that she is sensitive, her feelings are hurt easily, and that she does not cope well with change, which can cause depression and greater difficulty sleeping. (Tr. 46.) Claimant characterizes most of her days as bad days, with only a few good days per month. (Tr. 47.)

Claimant's physical limitations arise primarily from Hepatitis C and its treatment, which cause her fatigue, muscle pain, easy bruising, and further depression. (Tr. 48.) Claimant does not currently have access to medications because she lacks health insurance and cannot afford them. (Tr. 31.) At her most recent job, working in a grocery, she did not last a month, and she does not feel that she could hold a job at the present time. (Tr. 44-45.) And, although Claimant reports difficulties with concentration and memory, she feels that she could read an article and remember its content, though she chooses not to do so. (Tr. 36.)

B.    *Lay Testimony*

Jenkins, Claimant's mother, also testified at the hearing. She stated that she sees Claimant daily and does not believe that Claimant is capable of full-time work. (Tr. 50.) According to Jenkins, Claimant has difficulty concentrating, frequent ups and downs, and a poor attention span. She assists Claimant in shopping, getting around, and with financial support. She is also helping Claimant raise her children. (Tr. 51.) Claimant does not respond well to pressure. When a stressful situation arises, Claimant cannot deal with it and typically walks away. Jenkins reports that Claimant's anxiety attacks leave her upset to the point of vomiting and cause hyperactivity. (Tr. 52.) When Claimant is depressed, she does not want to leave the house. *Id.*

C.    *Vocational Expert Testimony*

The vocational expert ("VE") noted that the bulk of Claimant's limitations are non-exertional. (Tr. 56.) According to the VE, Claimant cannot perform past work as a cook. Claimant is capable of performing work as a laundry sorter or sorter, for which jobs are available in the regional and national economies. (Tr. 58.) The VE testified that there would be no jobs available for a person who cannot make it to work or walks off the job on a regular basis, or for a person who is moderately limited with respect to maintaining a schedule, regular attendance, or punctuality. (Tr. 59-60.)

### Summary of the ALJ's Findings

The ALJ engaged in the five-step "sequential evaluation" process when he evaluated Claimant's disability, as required. *See* 20 C.F.R. § 416.920; *see also Bowen v. Yuckert,* 482 U.S. 137, 140 (1987).

FINDINGS AND RECOMMENDATION                8                {KPR}

I.    Steps One and Two

At Step One, the ALJ concluded that Claimant had not engaged in any substantial gainful activity since the onset of her alleged disability. (Tr. 11.)  At Step Two, the ALJ determined that Claimant had the following severe impairments:  bipolar disorder, ADHD, and polysubstance and alcohol dependence in remission.  *Id.*  The ALJ noted that "[t]here is also a remote and questionable diagnosis of post traumatic stress syndrome" and that Claimant suffered from Hepatitis C, but had "completed treatment and was cleared to return to her regular work duties as of October 2004."  *Id.* The ALJ acknowledged that Claimant had alleged disability based on an anxiety disorder, but that the disorder was not diagnosed by an acceptable medical source.  *Id.*  The ALJ's specific findings as to each impairment are detailed below.

A.    *Bipolar Disorder*

Claimant was evaluated in July 2004 by Daniel Neims, Psy.D. ("Neims"), who "noted a possible diagnosis of bipolar disorder." (Tr. 14.)  In September 2004, Claimant saw Dr. Son after the completion of her Hepatitis C treatment and reminded him that she had been diagnosed with bipolar disorder. (Tr. 13.)  As a result, Dr. Son restarted Claimant on lithium and, six weeks later, Claimant "reported positive results and noted that others had also commented on her mental health improvement." (Tr. 13-14.)  Dr. Son referred her to BHR for counseling.  (Tr. 14.)

In September 2005, Claimant underwent a psychiatric evaluation by Nelson.  Claimant told Nelson that, though she had been more "irritable and emotional" of late, she "denied any significant depressive symptoms currently or historically." (Tr. 14.)  Nelson relied on a prior evaluation of Claimant by Dr. Lerner, which gave Claimant the a possible diagnosis of bipolar disorder. (Tr. 14.)

The ALJ concluded: "The claimant's treating and examining medical professionals seem to

have settled on a diagnosis of bipolar disorder versus mood disorder and the undersigned agreed with the majority." (Tr. 15.)

B.    *ADHD*

When Claimant saw Dr. Son in September 2004, she also reminded him that she had adult ADD. (Tr. 13.) The following year, Nelson also diagnosed her with ADHD, based in part on Lerner's prior diagnosis of same. (Tr. 14.) Claimant also testified that she is unable to work because of ADHD, among other things. (Tr. 15.)

C.    *Drug and Alcohol Abuse*

At the time of her evaluation by Nelson, Claimant "had just finished serving jail time for a DUI[.]" (Tr. 14.) Dr. Lerner's evaluation, which Nelson largely relied on, concluded that Claimant's diagnosis was complicated by her substance abuse and noted that Claimant did not work for a time "because first she had to receive treatment for drug and alcohol abuse[.]" (Tr. 14.) In July 2004, Neims diagnosed Claimant with "polysubstance and alcohol dependence in remission." (Tr. 14.) Dr. van Dam noted, in October 2006, that Claimant had "a long history of polysubstance dependence and alcohol dependence, both in remission." (Tr. 15.)

D.    *PTSD*

Neims diagnosed Claimant with "chronic PTSD," but the ALJ concluded that this was inconsistent with the medical records as a whole. (Tr. 14.)

E.    *Anxiety*

In 2005, Claimant reported to Nelson that she had been feeling more anxious and reported "panic like symptoms including a racing heart and shortness of breath[,]" but Nelson attributed this to situational stressors. (Tr. 14.) Claimant testified that her anxiety prevented her from working and

leaving the house regularly. Claimant described becoming nauseous every morning and daily panic attacks that feel like a heart attack and last approximately thirty minutes. (Tr. 15.) Claimant's mother also remarked on Claimant's panic attacks, "repeat[ing] the description the claimant had given as evidence that she had anxiety attacks." (Tr. 15.) The ALJ concluded: "Although the claimant focuses on her alleged anxiety as her main reason for being unable to work, the undersigned has already found this to be a non-medically determinable impairment." (Tr. 16.)

F.    Hepatitis C

Claimant completed Interferon treatment for her Hepatitis C in 2004, at which time she was again able to take lithium to treat her mental conditions. (Tr. 13.) Claimant attributed her previous inability to work to Hepatitis C, in part. (Tr. 14.)

II.    Step Three

At Step Three, the ALJ determined that Claimant's impairments do not meet or medically equal a listing as set forth in the regulations, specifically Listing 12.04 for affective disorders. The ALJ determined that Claimant was mildly restricted in performing activities of daily living; moderately restricted in social functioning, had mild to moderate difficulties with concentration, persistence, and pace; and suffered no episodes of decompensation. (Tr. 12.) Thus, the B Criteria were not satisfied. The ALJ also concluded that Claimant did not satisfy the C Criteria: "The claimant does not have repeated episodes of decompensation each of extended duration; there is no evidence to support that she would decompensate with even a minimal increase in mental demands; and she is able to function independently." (Tr. 13.)

III.    Claimant's RFC

The ALJ concluded that Claimant has the RFC:

to perform a full range of work at all exertional levels. However, the claimant is limited to simple and some complex tasks due to her moderate limitations in maintaining concentration and pace. Additionally, the claimant is limited to unskilled or entry-level semi-skilled work which would have a set routine and no more than brief or intermittent public contact.

(Tr. 13.)

## IV.    Step Four

At Step Four, the ALJ concluded that Claimant could not perform past relevant work because it she is limited to unskilled or entry-level skilled work and her past work as a cook is beyond her current skill level. (Tr. 16.)

## V.    Step Five

At Step Five, the ALJ concluded that Claimant was capable of performing other work that exists in substantial numbers in the national economy, specifically the representative occupations of laundry sorter, folding machine operator, and sorter. (Tr. 16.)

### Discussion

Claimant argues that the ALJ erred on the following grounds: (1) the ALJ failed to classify her anxiety as a severe impairment; (2) the ALJ failed to classify her PTSD as a severe impairment; (3) the RFC did not account for the limitations posed by all of Claimant's impairments; (4) the ALJ improperly rejected Claimant's testimony; and (5) the ALJ improperly rejected the testimony of Claimant's mother. Claimant is essentially correct on all counts and the Commissioner's decision should be reversed for an award of benefits.

## I.    Anxiety

The ALJ did not classify Claimant's anxiety as severe having concluded that the record lacked a "diagnosis of anxiety by an acceptable medical source." (Tr. 11.) In the response brief, the

FINDINGS AND RECOMMENDATION        12        {KPR}

Commissioner admits that the ALJ should have recognized Claimant's anxiety as a severe impairment, but argues that the ALJ's error in doing so was harmless because the ALJ acknowledged the impairment and accounted for its associated limitations. Claimant responds that the error was not harmless because the ALJ based his credibility determination, in large part, on his finding that Claimant's anxiety was not actually severe, as she testified. Thus, the error was also not harmless the ALJ did not account for the limitations posed by anxiety in the RFC.

An ALJ's error is harmless where it "was inconsequential to the ultimate nondisability determination." *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2005) (citations omitted). This occurs, though there are other bases for a finding of harmless error, "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Id.* Here, the failure to recognize anxiety as one of Claimant's severe impairments was both prejudicial and relevant to the ultimate nondisability determination. A substantial portion of Claimant's alleged impairments are a result of her anxiety, including panic attacks, difficulty sleeping, emotionality, difficulty coping with stress, lack of focus, compulsive thoughts, fear of being in public, fear of other people, and a tendency to isolate herself. The inclusion of these limitations would undoubtedly alter Claimant's RFC and potentially alter the overall disability finding. Thus, the ALJ's error was not harmless and Claimant's severe anxiety is recognized by the court.

II.    PTSD

The ALJ did not classify Claimant's PTSD as a severe impairment because a 2006 diagnosis of chronic PTSD was not repeated in subsequent years. Claimant argues that that this was improper because there is substantial record evidence that PTSD is a severe impairment. Claimant points to evaluations by Drs. Neims and Rodkey, treatment notes from Cascadia Behavioral Health, and her

own testimony about current difficulties resulting from past trauma to show that the ALJ's determination was not supported by substantial evidence. The Commissioner admits that the ALJ's treatment of PTSD could have been more clear, but maintains that any error was harmless as it was clearly considered and incorporated into the RFC.

As Claimant argues, both Drs. Neims and Rodkey diagnose Claimant with chronic PTSD. Claimant has reported having flashbacks and nightmares arising from her abusive past. She also testified at the administrative hearing that violence and confrontation make her uncomfortable as a result of past abusive relationships. The ALJ rejected this evidence as unsubstantiated by other record evidence and because it was not repeated in subsequent years. As Claimant points out, this analysis ignores Claimant's own testimony.

"An impairment may be construed as non-severe only if the evidence establishes that it 'has no more than a minimal effect on an individual's ability to work.' If the ALJ cannot clearly determine the effect of the impairment on the claimant's ability to complete work activities, then the evaluation should not end at the step two finding of a non-severe impairment. However, if the ALJ finds the impairment to be non-severe based on 'clearly established medical evidence,' and substantial evidence supports that conclusion, the reviewing court should not disturb the non-severe finding." *Peterson v. Astrue*, Civil No. 09-880-HA, 2010 WL 3824080, at *4 (D. Or. Sept. 22, 2010) (quoting *Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005)).

Here, the record evidence establishes that, at one time, Claimant was diagnosed with chronic PTSD and herself reports experiencing recurring traumas from past relationships. The ALJ's finding is based on an absence of evidence to corroborate the earlier diagnosis of chronic PTSD. This does not amount to clearly established medical evidence that Claimant does not suffer from PTSD, and

so the ALJ's finding that it was non-severe is not supported by the record. Rather, the only medical evidence in the record supports the PTSD diagnosis, as does Claimant's testimony given on a number of occasions. For these reasons, the court finds the ALJ's Step Two finding as to PTSD unwarranted and recognizes Claimant's PTSD as a severe impairment.

III.    RFC

Claimant argues that because the ALJ's RFC does not account for anxiety and PTSD, both properly recognized as severe impairments, it does not adequately address all of Claimant's vocational limitations. Claimant further argues that the RFC does not contain limitations for impairments that were classified as severe, namely those associated with her bipolar disorder and ADHD, and that the ALJ referred only to record evidence that supported his proffered RFC and ignored record evidence that contradicted it. The Commissioner responds that the ALJ's findings as to Claimant's RFC remains proper, despite the ALJ's erroneous findings at Step Two. The Commissioner does not explain how the RFC accounts for Claimant's additional impairments.

In light of the court's determination that both anxiety and PTSD are severe impairments, it is apparent that the ALJ's RFC does not capture all of Claimant's impairments. According, the ALJ's RFC is erroneous.

IV.    Credibility

A.    *Claimant Credibility*

Claimant objects to the ALJ's credibility determination for failure to give clear and convincing reasons. Ninth Circuit precedent holds that

> [w]ithout affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing. If an ALJ finds that a claimant's testimony relating to the intensity of [her] pain and other limitations is unreliable, the ALJ must make a credibility

FINDINGS AND RECOMMENDATION          15                        {KPR}

determination citing the reasons why the testimony is unpersuasive.

*Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999) (internal citations omitted).

In discussing Claimant's credibility, the ALJ pointed out that, although she claimed to have difficulty focusing due to anxiety, she "has no difficulty following a new program on the television by her own admission." (Tr. 15.) He also cited as inconsistent her testimony about riding public transportation because she first stated that she could not use public transportation, but later stated that she could so long as it was not overly crowded. The ALJ wrote: "Although the claimant focuses on her alleged anxiety as her main reason for being unable to work, the undersigned has already found this to be a non-medically determinable impairment." (Tr. 16.) Thus, the ALJ's credibility finding was based, in substantial part, on his admittedly erroneous finding that Claimant's anxiety was not severe. The ALJ also found Claimant's testimony that she was not functional for several days each month at odds with the fact that she had regained custody of her daughter. *Id.* Finally, the ALJ found that Claimant's poor work history and ability to "always find some reason for being unable to work[,]" further undermined her credibility. *Id.* Claimant responds that there is no evidence that she is malingering and, in fact, Dr. Neims noted that his evaluation was not indicative of malingering. (Tr. 214.) Claimant also objects to the ALJ's characterization of the evidence.

First, Claimant argues that the ability to care for children does not disprove disability and, in light of the fact that there is no evidence as to Child Protective Services' determination of parental ability or fitness, the ALJ's speculation on this point has no probative value. In fact, providing child care may undermine claimed limitations, but is alone not dispositive of non-disability. *See O'Neal v. Astrue*, 391 Fed. Appx. 614, 618 (9th Cir. 2010) (finding that, although child care may have

required some physical exertion beyond the claimant's stated limitations, doing so briefly and under exigent circumstances is insufficient to contradict the opinions of treating physicians); *see Bubion v. Barnhart*, 224 Fed. Appx. 601, 605 (9th Cir. 2007) (finding the ability to care for children one of many "cogent reasons" to find the claimant's testimony at odds with her actual limitations); *see Sweeney v. Barnhart*, 162 Fed. Appx. 580, 581 (9th Cir. 2006) (wherein "the ALJ permissibly relied on Claimant's daily activities, such as caring for her home and children, and her part-time work . . . as inconsistent with her alleged limitations.").

In *Reinertson v. Barnhart*, 127 Fed. Appx. 285 (9th Cir. 2005), the court noted that daily activities that include caring for children and for a home "may be sufficient to discredit a claimant's allegations where the claimant performed those activities 'with no significant assistance.'" *Id.* at 288 (quoting *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)). Thus, such activities may suggest a lack of credibility, but only where the "level of activity [is] inconsistent with [the claimant's] claimed limitation[.]" *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

In the present matter, Claimant takes care of one child, aged thirteen. She stated that she helps her child get ready for school, and does basic chores and meal preparation. She also stated that her mother and a friend provide care to that child. Viewing the record evidence as a whole, the fact that Claimant provides basic care for a teenage child does not undermine her testimony as to the extent of her impairments.

Second, Claimant objects to the ALJ's conclusion that once she resumes[1] taking medication, she will no longer be severely impaired. The Claimant contends that it is improper for the ALJ to

---

[1] At the time of briefing, Claimant had recently been added to the Oregon Health Plan, which would enable her to afford medication.

{KPR}

speculate on Claimant's future condition or make medical determinations. Furthermore, Claimant argues that this finding is erroneous, based on the record evidence showing that Claimant's impairments have persisted during periods of treatment.

The court agrees that, although the record does show that Claimant's condition improves on medication, it does not establish that Claimant is not disabled while on medication. And, although such evidence bears on the severity of the impairment in question, it does not speak to Claimant's credibility. Thus, that she fares better on medication may be weighed in the disability determination, it does not undermine her credibility or render her not disabled under the SSA framework.

Third, Claimant objects to the ALJ's conclusion that she is not motivated to work. She argues that her work history is tied to ongoing physical and mental impairments and does not reflect a lack of trying, as the ALJ insinuates. The Commissioner argues that, under Ninth Circuit precedent, lack of motivation or other self-imposed limitations provide clear and convincing reasons to disregard a claimant's testimony. In *Tommasetti v. Astrue*, 533 F.3d 1035 (9th Cir. 2008), the ALJ questioned Tommasetti's credibility for several reasons: he did not seek an aggressive or tailored treatment program; his testimony regarding the severity of his conditions was vague and he failed to explain why he did not seek sedentary work; that he had almost $100,000 in savings may have contributed to a lack of motivation to find feasible work; and he had traveled to South America to care for an ailing sister. The Ninth Circuit upheld the adverse credibility finding as substantially supported in the record.

Here, the ALJ wrote: "The undersigned notes that the claimant has a poor work history and seems to always find some reason for being unable to work." (Tr. 16.) The ALJ did not provide support for this assertion, though he did point out that Claimant's alleged inability to focus did not

extend to following a new television program. This assertion alone is an insufficient basis for the ALJ's insinuation that Claimant's poor work history was a choice, rather than the result of a disability.

The Commissioner gives additional reasons to find Claimant's testimony not credible, but these reasons may not be attributed to the ALJ and cannot provide cover for an ALJ's erroneous finding. "[T]he Ninth Circuit has held that, in reviewing disability determinations, it 'cannot rely on independent findings of the district court.' Rather, '[it is] constrained to review the reasons the ALJ asserts.'" *Nordgren v. Astrue*, Civil No. 09-91-AC, 2010 WL 3586540, at *8 (quoting *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006)). Furthermore, "if the Commissioner's contention invites this [c]ourt to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline." *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). Thus, the court will not evaluate new reasons offered by the Commissioner in determining whether or not the ALJ erred.

The Commissioner argues that a credibility determination may be upheld so long as it is supported by the record evidence, even if the ALJ does not explicitly link his or her determination with the evidence. The Commissioner cites *Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001), for this proposition. In that case, the claimant pointed out that the ALJ had not addressed a statement by a physician which conflicted with the ALJ's ultimate determination. The court observed that, because the record evidence was in conflict on the particular point, the ALJ "could have" drawn a specific inference where "substantial evidence supported that conclusion . . . ." *Id.* at 514. In the present case, the ALJ was not resolving a conflict in evidence, but attempting to justify his credibility determination with clear and convincing reasons but failed to meet his burden. In the absence of

such reasons, the Commissioner may not assert an alternative basis to discredit Claimant not already proffered by the ALJ.

The Commissioner further asserts that, even if one basis for a credibility finding is eliminated, the finding as a whole may be upheld and, to the extent the ALJ's finding is rational, the ALJ is entitled to deference on this point. Here, however, the primary basis for the ALJ's finding was that the anxiety was not severe, a finding that has since been conceded as false by the Commissioner. The ALJ's remaining reasons are not sufficient to discredit Claimant's testimony.

The court agrees that the ALJ's credibility determination cannot be upheld. The ALJ's conclusion that Claimant was not credible was based in large part on his finding that anxiety was not a severe impairment, which finding the Commissioner has since admitted was made in error. Thus, the ALJ's conclusion that Claimant was exaggerating about her symptoms resulting from anxiety was grounded not in the evidentiary record, but on his own faulty assumption. Absent this assumption, and in light of the court's findings as to the ALJ's other proffered reasons, the ALJ's credibility determination cannot be upheld. Accordingly, the ALJ's credibility determination was in error.

### B.    *Lay Witness Credibility*

In rejecting the testimony of Claimant's mother, the ALJ wrote: "Regarding Ms. Jenkins, the undersigned finds that her testimony was essentially a repetition of the claimant's and, since the undersigned has found that less than credible, parroting of it by the witness adds little to its credibility." (Tr. 16.) Thus, to the extent that the ALJ's credibility determination as to Claimant was inappropriate, his determination as to Claimant's mother was also inappropriate. Although the standard for rejecting lay testimony is different from that for claimant testimony and only germane

reasons are required, if the underlying reasons are illegitimate, they cannot suffice as reasons, germane or otherwise.  Claimant also argues that this reason itself is insufficient to discredit Jenkins's testimony as the ALJ provided no analysis as to why this was problematic, from a credibility standpoint.  Furthermore, as Claimant points out, her mother sees her on a daily basis and is in a good position to testify as to her limitations.  For these reasons, Claimant urges the court to credit Jenkins's testimony as true.

The Commissioner argues that the ALJ may reject lay testimony for the same reasons given for rejecting claimant testimony, where the reasons are sufficient and the testimony is similar.  The Commissioner argues further that the ALJ may reject testimony unsupported by the record.  And, if the court determines that lay testimony was improperly discounted, the Commissioner urges the court to remand for further proceedings, as lay testimony alone cannot establish disability.

Here, the ALJ's determination as to Jenkins's credibility is premised directly on his erroneous finding as to Claimant's credibility.  The ALJ gave no other reason to discount this testimony and, thus, the court concludes that the ALJ's credibility determination as to Jenkins was erroneous.

C.    *Crediting Testimony as True*

"[W]here the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, 'we will not remand solely to allow the ALJ to make specific findings regarding that testimony.'  Rather, that testimony is also credited as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (quoting *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1401 (9th Cir. 1988)).  This approach also extends to improperly rejected lay testimony:  "The Ninth Circuit has held repeatedly that a reviewing court is entitled to credit as true medical and lay witness testimony." *Carlson v. Astrue*, 682 F. Supp. 2d

1156, 1160 (D. Or. 2010).  Here, the ALJ rejected the testimony of Claimant and Jenkins without

a proper legal basis and the court credits their testimony as true.

Where such testimony is credited, the court may remand for an award of benefits, rather than

for reconsideration, where:

> "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues that must be resolved before a
> determination of disability can be made, and (3) it is clear from the record that the
> ALJ would be required to find the claimant disabled were such evidence credited."

*Id.* (quoting Smolen v. Chater, 80 F.3d 1273, 1293 (9th Cir. 1996)) (internal citation omitted).

Having credited the above testimony as true, the court concludes that there are no outstanding issues

and the ALJ would be required to find Claimant disabled.  In particular, the court refers to an

exchange between the ALJ and the VE at Claimant's administrative hearing.  After presenting the

hypothetical to the VE upon which he based his finding of non-disability, the ALJ questioned the

VE as follows:  "And what if we were to add in that she was moderately limited in her ability to

perform activities within a schedule, maintain regular attendance, and be punctual?" (Tr. 60.)  The

VE replied that the hypothetical claimant would not able to work.

Having credited Claimant's testimony as to her limitations as true, it is apparent that she

would be moderately limited in the areas described by the ALJ, namely being on time and

maintaining attendance.  Claimant testified to her difficulty managing her anxiety, which often

prevents her from leaving the house, successfully using public transportation, sleeping, and dealing

with general stressors.  Claimant's anxiety response includes avoidance and isolation.  Based on this

evidence, Claimant would be at least moderately limited in terms of punctuality and attendance.

Accordingly, the court concludes that the ALJ would be required to find Claimant disabled, and this

matter should be remanded for an award of benefits.

*Conclusion*

For the reasons stated, this matter should be REMANDED for an award of benefits.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due July 1, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 17th day of June, 2011.


/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge